Opinion filed September 2,
2010

 

 

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-09-00097-CR 

                                                    __________

 

                          MARK
ANTHONY MITCHELL, Appellant

 

                                                             V.

 

                                      STATE
OF TEXAS, Appellee



 

                            On
Appeal from the Criminal District Court No. 1

                                                          Tarrant
County, Texas

                                                  Trial
Court Cause No. 1121287D

 



 

                                            M
E M O R A N D U M   O P I N I O N

            The
jury convicted Mark Anthony Mitchell of the state jail felony offense of dog
fighting.  Appellant pleaded “true” to an enhancement paragraph alleging that
he had two prior, sequential felony convictions.  The jury found the
enhancement allegations to be true, making the offense punishable as a
second-degree felony.  The jury assessed appellant’s punishment at seven years
confinement.  In two points of error on appeal, appellant challenges the legal
and factual sufficiency of the evidence to support his conviction.  We affirm.

Sufficiency
of the Evidence Standards of Review

            To determine if the evidence is legally sufficient, the
appellate court reviews all of the evidence in the light most favorable to the
verdict and determines whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319 (1979); Laster v. State, 275 S.W.3d 512,
517-18 (Tex. Crim. App. 2009); Jackson v. State, 17 S.W.3d 664, 667
(Tex. Crim. App. 2000).  To determine if the evidence is factually sufficient,
the appellate court reviews all of the evidence in a neutral light.  Laster,
275 S.W.3d at 519; Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App.
2006); Johnson v. State, 23 S.W.3d 1, 10-11 (Tex. Crim. App. 2000); Cain
v. State, 958 S.W.2d 404, 407-08 (Tex. Crim. App. 1997); Clewis v. State,
922 S.W.2d 126, 129 (Tex. Crim. App. 1996).  Then, the reviewing court
determines whether the evidence supporting the verdict is so weak that the
verdict is clearly wrong and manifestly unjust or whether the verdict is
against the great weight and preponderance of the conflicting evidence.  Watson,
204 S.W.3d at 414-15; Johnson, 23 S.W.3d at 10-11.  The jury, as the
finder of fact, is the sole judge of the weight and credibility of the
witnesses’ testimony.  TEX. CODE CRIM. PROC. ANN. art. 36.13 (Vernon 2007), art.
38.04 (Vernon 1979).

The Evidence at Trial

            Manuel Cortez woke
up to the sound of his dogs barking in his backyard at about midnight on May 6,
2008.  He went outside to see what was disturbing his dogs.  Cortez testified
that he heard a “loud commotion” coming from across the alley.  The record
shows that the noise was coming from the backyard of the residence at 1608
Daniel Street.  Cortez described the commotion as “dogs fighting [and] people
yelling, laughing, [and] carrying on.”  Cortez said that “[g]uys [were] yelling
[things] like, kill him, get him, [and] don’t let him go” and that the dogs
were “growling and snarling.”    

Cortez
looked through his fence into the backyard across the alley.  He said that
there were about eighteen to twenty men and five dogs in the backyard.  He said
that   car lights were being used to light the area.  Cortez saw appellant
holding onto a brown pit bull dog and another man holding onto a black pit bull
dog.  Cortez said that the brown dog was fighting with the black dog.  The
record shows that appellant owned the brown dog.  At one point, appellant
pulled his dog away from the fight but then let it fight again.  Cortez said
that appellant told his dog to kill the other dog.  Cortez testified that, at
one point, appellant said, “I bet you $100 my dog kill[s] your dog.”

Cortez’s
wife called the police.  Cortez said that many of the men left the scene and
that three dogs were taken away from the scene before the police officers
arrived.  Fort Worth Police Officers J.C. Williams and C.S. Sesbedez responded
to the call.  When they arrived at the scene, they saw a parked SUV that was
facing toward the backyard.  Officer Williams testified that the SUV’s
headlights were being used to light the backyard.  The officers heard yelling
coming from the backyard.  Officer Williams said that people were saying “get ’em
[and] kill ’em” and that dogs were growling at each other.  The officers walked
to the backyard and saw seven people standing in a semi-circle around a brown
pit bull dog and a black pit bull dog.  The people were facing away from the
officers and did not notice that the officers had arrived.  The dogs were being
held with chains.  Officer Williams testified that appellant was holding the
chain on the brown dog and that the brown dog was fighting with the black dog. 
Officer Williams said that appellant was allowing the brown dog to attack the
black dog.  At that time, the brown dog was biting the black dog on the neck.  The
officers told appellant and the person holding the chain on the black dog to
break up the fight.  Officer Williams said that appellant pulled the brown dog
away from the black dog by yanking its chain.  When appellant yanked the chain,
the brown dog let go of the black dog’s neck but then started biting the black
dog on its legs.  With a few more yanks of the chain, appellant was able to
separate the brown dog from the black dog.  After the dogs were separated, the
officers observed several lacerations on the black dog’s neck and legs.  Both
of the dogs’ faces were covered in blood.  Appellant told the officers that he
owned the brown dog.

Fort
Worth Animal Control Officer Barry Alexander arrived at the scene at about 1:30 a.m. 
He testified that the brown dog and the black dog had fresh, bleeding bite
wounds on their bodies.  He said that the brown dog had multiple wounds to the
face and neck and that the black dog had a few less wounds.  Officer Alexander
also said that the dogs were in need of medical treatment.

Cris
Berry, an animal cruelty investigator for Fort Worth, examined the dogs.  Berry
testified that the dogs had multiple bite wounds and that the pattern of wounds
on the dogs was consistent with and common to dog fighting.  Berry cleaned the
dogs and gave medication to them.

Appellant
called his son, Mark Anthony Mitchell Moore, as a witness.  Moore testified
that he learned in a phone call that appellant’s dog was fighting another dog. 
Moore said that the dogs had gotten loose and were fighting.  He said that
appellant was not present when the dogs started fighting.  Moore said that
appellant lived on Spiller Street but that appellant kept his dog at the
address where the dogs were fighting.  Moore testified that he picked up
appellant from his house on Spiller Street and took him to the scene of the dog
fight so that he could break up the fight.  Moore said that, when they arrived
at the scene, the dogs were fighting.  He said that appellant pulled his dog
back and tried to get him by the collar.  Moore said that it was a struggle to
get the dogs loose from each other.  Moore testified that there was no planned,
organized dog fight.

Appellant
also called Janice Philips as a witness.  She testified that she was at home with
appellant on the night of the incident.  She said that Moore came to their
house and that appellant left with Moore.

Analysis

            A
person commits the offense of dog fighting if the person “intentionally or
knowingly causes a dog to fight with another dog.”  Tex. Penal Code Ann. § 42.10(a)(1) (Vernon Supp. 2009).  “Dog
fighting” is defined as “any situation in which one dog attacks or fights with
another dog.”  Id. § 42.10(b)(1).  The evidence was undisputed that
appellant’s brown dog was fighting with the black dog.  Cortez and Officer
Williams both saw appellant holding his dog’s chain while the dogs were fighting. 
The SUV’s headlights were being used to light the area, and a number of people
were watching the dogs fight.  Officer Williams testified that appellant
allowed his dog to attack the other dog.  Cortez said that appellant told his
dog to kill the other dog and that appellant said to the handler of the other
dog, “I bet you $100 my dog kill[s] your dog.”  Both dogs had fresh wounds and
were bleeding after the fight.  Moore testified that appellant was merely
trying to separate his dog from the other dog.  However, as the sole judge of
the credibility of the witnesses, the jury was free to disbelieve Moore’s testimony. 
Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).  The
evidence was legally and factually sufficient to establish that appellant
intentionally or knowingly caused a dog to fight with another dog.  We overrule
appellant’s points of error. 

This
Court’s Ruling

            The judgment of the
trial court is affirmed.

 

                                                                                    

                                                                                                TERRY
McCALL

                                                                                                JUSTICE


September 2,
2010

Do not publish. 
See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.